**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**DENISA CUCU, ET AL.,**

              Plaintiffs,[1]         14-cv-1235 (JGK)

    - against -

**861 REST. INC., ET AL.,**                      <u>**MEMORANDUM OPINION**</u>
<u>**AND ORDER**</u>

              Defendants.
_____

**JOHN G. KOELTL, District Judge:**

    The plaintiffs, Denisa Cucu, Johanna Iniguez, Juan M. Manzanares Manjarrez, and Vasiliki Pantazopouplou, brought this action against their former employer, Park Café, Christos Averkiou[2] and Sofokelis Dertouzos (together, the "defendants"), alleging that the defendants (1) violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203, and the New York Labor Law ("NYLL"), N.Y. Lab. L. § 652(1), by improperly claiming a tip credit and failing to pay an appropriate minimum wage; (2) violated the NYLL by failing to pay for their uniform maintenance, 12 N.Y.C.R.R. § 146-1.7(b); and (3) violated the

---

[1] The original plaintiff, Juan Galicia, is no longer a plaintiff. The Clerk is directed to amend the caption.
[2] The plaintiffs filed this motion on June 2, 2016. On July 15, 2016, the plaintiffs filed a Third Amended Complaint, the only material change being that Averkiou was added as an additional defendant. By letter dated January 5, 2017, the parties requested that this current motion be treated as if it were also filed against the newly named defendant. See ECF No. 86.

1

Wage Theft Prevention Act ("WTPA"), N.Y. Lab. L. § 195(1)(a). The plaintiffs also argue that they are entitled to liquidated damages under both the FLSA, 29 U.S.C. § 216(b), and the NYLL, N.Y. Lab. L. §§ 198(1-a), 663(1).

The plaintiffs now move for partial summary judgment, arguing that (1) the defendants are liable for failing to comply with the tip notice provisions of the FLSA and the NYLL; (2) the defendants were legally required to provide uniform maintenance pay but did not; (3) the defendants are liable for violating the WTPA; and (4) the plaintiffs are entitled to liquidated damages under the FLSA and NYLL.

I.

The following facts are undisputed unless otherwise noted.

Park Café is a full-service restaurant located in New York City. (56.1 Stmts. ¶ 1.) The plaintiffs are former and current employees of Park Café. Cucu began working as a waitress for Park Café on September 24, 2012 and worked until January 5, 2014. (56.1 Stmts. ¶¶ 3, 4.) Iniguez currently works as a waitress at Park Café, although it remains disputed exactly when she began working there. (56.1 Stmts. ¶¶ 14, 15.)[3] Pantazopoulou

---

[3] The plaintiffs claim she began working on August 25, 2010. (Pl's. 56.1 Stmt. ¶ 15.) The defendants deny this statement but do not provide any alternative date, although the defendants' deposition testimony indicates that she began working for Park Café three and a half or four years ago. See Averkiou Dep. 20:21; Dertouzos 29:2-3.

worked as a waitress for Park Café from November 21, 2007 until December 13, 2010. (56.1 Stmts. ¶¶ 30, 31.)  Manjarrez was a busboy at Park Café, although the timing of his employment remains unclear.  (56.1 Stmts. ¶ 28.)

Throughout the relevant time periods, Park Café paid some of the plaintiffs a fixed hourly wage and also permitted them to take tips. The defendants provided a yearly wage notice and acknowledgement to Cucu and Iniguez on February 7, 2013, although the parties dispute whether Cucu and Iniguez received such notices prior to that date.  (56.1 Stmts ¶¶ 6, 16.); (Gurrieri Affirmation in Supp. of Mot. for Partial Summ. J. ("Gurrieri Affirm."), Ex. 2 at 1, 8); (Gurrieri Affirm., Ex. 1 at 265, 448).

In addition to the yearly wage notices, Park Café also supplied Cucu and Iniguez with weekly wage statements, but the weekly wage statements did not include hourly rate information until January of 2013. (56.1 Stmts. ¶¶ 9, 10, 26.)

The parties dispute the extent to which the defendants informed Cucu, Iniguez, and Pantazopouplou about the tip credit provisions of the FLSA and the NYLL. (56.1 Stmts. ¶¶ 7, 17, 36.) The defendants verbally informed the plaintiffs of their hourly rate and that the rate was set by law. Averkiou Dep. 12:11-13:18, 20:3-10, 22:17-22; Dertouzos Dep. 16:25-17:14, 27:11-18, 28:15-17. They also verbally made clear to the plaintiffs that

3

they would be receiving tips and informed them that the bookkeeper made sure they received the appropriate amount of wages. Dertouzos Dep. 17:10-14. Aside from this verbal communication, the defendants claim they had a poster hanging in the café that listed the minimum wage rate. Dertouzos Dep. 15:14-15. The record does not reflect that the defendants informed the plaintiffs of the specific provisions of the FLSA or NYLL dealing with the tip credit.

Park Café also supplied its employees with required uniforms, which consisted of an apron and a vest with a logo on it. (56.1 Stmts. ¶¶ 12, 21, 40). Each employee was supplied with one or two of each item, and the defendants would occasionally replace these items when they began to appear worn. The defendants did not, however, give their employees uniform maintenance pay. See Averkiou Dep. 12:3-10.

## II.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs.

Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d

5

Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases).

### III.

#### A.

The FLSA permits an employer to pay tipped employees a fixed hourly rate less than the federal minimum wage as long as the employee's tips raise the employee's effective hourly wage rate above the minimum wage. See 29 U.S.C. § 203(m). But an employer may not claim such a tip credit unless it has informed the employee of the provisions of the section of the FLSA permitting the tip credit. See Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015); see also Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 288 (S.D.N.Y. 2011) (concluding that the notice requirement was not satisfied even after an employer informed employees that compensation would be an hourly rate plus tips and posted notices about minimum wage laws, because employees were not notified specifically that the employer intended to satisfy its minimum wage obligations through the tip credit).

The employer bears the burden of showing that it satisfied the notice requirement "by, for example, "providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law." Id. (internal citation omitted). "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage." Inclan, 95 F. Supp. 3d at 497 (quoting Reich v. Chez Robert, Inc., 28 F.3d 401, 403 (3d Cir. 1994)). "Even if the employee received tips at least equivalent to the minimum wage," the notice provision must be satisfied. Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002).

Because the employer has the ultimate burden of proving compliance with the tip credit notice requirement, an employer opposing summary judgment must "do more than point to a dearth of evidence." Inclan, 95 F. Supp. 3d at 498 (quoting Perez v. Lorraine Enters., Inc., 769 F.3d 23, 27 (1st Cir. 2014)); see also Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 486 (2d Cir. 2014) ("[W]here the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the nonmoving party's case." (brackets and internal quotation marks omitted)). Instead, an

employer is required to "adduce definite competent evidence showing that [employees] were informed of the tip credit." Inclan, 95 F. Supp. 3d at 498 (quoting Perez, 769 F.3d at 30).

The defendants argue that genuine disputes of material fact exist as to whether they satisfied the notice requirement, pointing to the defendants' deposition testimony that referenced paystubs reflecting the amount of tips each employee received each week. But merely informing employees that they are receiving tips in addition to their hourly wage fails to satisfy the requirement to inform the employees "that [the employer] intended to take a tip credit with respect to their salary." Copantitla, 788 F. Supp. 2d at 288; see also Hernandez v. Jrpac Inc., No. 14-cv-4176 (PAE), 2016 WL 3248493, at *24 (S.D.N.Y. June 9, 2016) (granting a plaintiff's partial motion for summary judgment because while the employees "were informed that they would be paid a fixed weekly wage and tips . . .[the employer] never informed the employees that it intended to use the tips the workers received to satisfy any part of its minimum wage obligations").

The defendants also argue that some of the plaintiffs' paystubs clearly demonstrate that these employees were properly credited with their reported tips. But the fact that certain employees received the minimum wage after accounting for tips does not satisfy the employer's obligation to provide notice

8

under § 203(m); the employer is still obliged to inform its employees that it is intending to use the tip credit. See Chung, 246 F. Supp. 2d at 229; see also Martin v. Tango's Restaurant, Inc., 969 F.2d 1319, 1323 (1st Cir. 1992) ("It may at first seem odd to award back pay against an employer . . . where the employee has actually received and retained base wages and tips that together amply satisfy the minimum wage requirements. Yet Congress has in section 3(m) expressly required notice as a condition of the tip credit and the courts have enforced that requirement.").[4]

Accordingly, the evidence fails to show that the defendants satisfied the statutory requirements necessary to take the tip credit.

---

[4] The defendants' depositions indicate that the defendants displayed posters in Park Café describing minimum wage laws. See Averkiou Dep. 20:6-7, Dertouzos Dep. 39:22-25-40:1-23. But the defendants fail to reference these posters in their papers, let alone provide a description as to their content. Accordingly, the defendants have failed to "adduce definite competent evidence showing that [employees] were informed of the tip credit" by way of such a poster. Inclan, 95 F. Supp. 3d at 498 (quoting Perez, 769 F.3d at 30); see also Copantitla, 788 F. Supp. 2d at 288 ("A generic government poster could inform employees that minimum wage obligations exist, but could not possibly inform employees that their employers intend to take the tip credit with respect to their salary."); Hernandez, 2016 WL 3248493, at *24 (granting the plaintiffs' motion for partial summary judgment because the defendant merely provided "uncorroborated claim[s] that [government] posters were prominently displayed during plaintiffs' employment.").

B.

The plaintiffs also seek partial summary judgment for the defendants' failure to comply with the New York Labor Law ("NYLL"). "The NYLL allows an employer to take a tip credit for tipped employees, subject to certain conditions similar to those under the FLSA." Hernandez, 2016 WL 3248493, at *25. Unlike federal law, however, the employer must specifically provide "written notice" to employees, informing them of the requirement that extra pay is required if tips do not elevate the employee's wages to the minimum hourly rate. 12 N.Y.C.R.R. § 146-2.2. "These notices must be provided in English and the workers' primary language, and acknowledgement of receipt of such notices, signed by the employee, are required to be kept for six years." Hernandez, 2016 WL 3248493, at *25 (citing 12 N.Y.C.R.R. § 146-2.2 (a) & (c)). "An employer that fails to comply with the notice requirements under the NYLL may not utilize the tip credit to satisfy its minimum wage and overtime obligations." Hernandez, 2016 WL 3248493, at *25.

For the same reasons discussed above, the defendants may not claim a tip credit under the NYLL. The defendants fail to point to any evidence in the record showing that the defendants provided the plaintiffs with any written notices that "recite the amount of tip credit being taken to satisfy the minimum wage and overtime wage laws." Id. Accordingly, there is no genuine

dispute of material fact that the defendants are not entitled to use a tip credit for the purposes of complying with its obligations under the NYLL. The defendants are ineligible to take the tip credits under the FLSA and the NYLL.

C.

Under New York law, employers are typically required to pay "uniform maintenance pay" for the maintenance of their employees' required uniforms. See 12 N.Y.C.R.R. § 146-1.7(b). But under the "wash and wear" exemption:

> An employer will not be required to pay the uniform maintenance pay, where required uniforms
> (1) are made of "wash and wear" materials;
> (2) may be routinely washed and dried with other personal garments;
> (3) do not require ironing, dry cleaning, daily washing, commercial laundering, or other special treatment; and
> (4) are furnished to the employee in sufficient number, or the employee is reimbursed by the employer for the purchase of a sufficient number of uniforms, consistent with the average number of days per week worked by the employee.

12 N.Y.C.R.R. § 146-1.7(b).

The plaintiffs Cucu, Iniguez, and Panatazopoulou claim that they were required to wear, launder, and maintain a uniform consisting of an apron and a vest with a logo. They contend there is no genuine dispute of material fact that defendants are liable for unpaid uniform maintenance pay. But as the record currently stands, it is unclear whether the uniforms were made of "wash and wear" materials, whether the uniforms could be

routinely washed and dried with other personal garments, or whether the uniforms required special treatment such as ironing, dry cleaning, daily washing, or commercial laundering. See 12 N.Y.C.R.R. § 146-1.7(b). And while the plaintiffs argue that the defendants' policy to simply replace uniforms in bad condition is inconsistent with the fourth prong of the "wash and wear" exemption, it remains unclear at this stage why such a policy would fail to satisfy the requirement that uniforms are "furnished to the employee in sufficient number . . . consistent with the average number of days per week worked by the employee." 12 N.Y.C.R.R. § 146-1.7(b). It is also unclear why a single apron or vest cannot be worn throughout the week and laundered on the weekend. One vest or apron might be "consistent with" the average number of days worked per week. The regulation does not specify that the number of uniforms be equal to the average number of days worked per week. cf. Jin M. Cao v. Wu Liang Ye Lexington Restaurant, Inc., No. 08-cv-3725 (DC), 2010 WL 4159391, at *5 (S.D.N.Y. Sept. 30, 2010) (declining, under a previous iteration of the uniform pay requirement, to award damages to waiters who were provided with one red vest by their employer because there was "no evidence in the record that plaintiff waiters incurred any expenses to acquire or clean their red vests"); Biasi v. Wal-Mart Stores E., LP, No. 15-cv-0454 (GTS), 2016 WL 1057045, at *1 (N.D.N.Y. Mar.

14, 2016) (denying a defendant's motion to dismiss a uniform maintenance pay claim when plaintiff was provided two vests for five days of work).

Accordingly, disputes of material fact remain as to whether the plaintiffs are entitled to uniform maintenance pay, and whether the uniforms the defendants provided fell within the wash and wear exemption. cf. Ramirez v. CSJ & Co., No. 06-cv-13677 (LAK) 2007 WL 700831, at *2 (S.D.N.Y. Mar. 6, 2007) (concluding that, under a previous iteration of the uniform requirement, the question of whether a T-shirt bearing a deli's name and logo is a uniform "probably is better decided by a trier of fact than as a matter of law"). The plaintiffs' motion for partial summary judgment with respect to uniform maintenance pay is denied.

D.

The plaintiffs argue that they are entitled to liquidated damages under the FLSA and NYLL.

The FLSA provides that an employer who violates the Act's minimum wage or overtime provisions "shall be liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned

13

by the delay in receiving wages due caused by the employer's violation of the FLSA." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999) (citing Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 583–84 (1942)). Courts have discretion to deny an award of liquidated damages if "the employer shows that, despite the failure to pay appropriate wages, the employer acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that the acts or omissions giving rise to the failure did not violate the FLSA." Id. at 142 (quoting 29 U.S.C. § 260). The employer bears the burden of establishing both subjective good faith and objective reasonableness. See Reich v. S. New England Telecommunications Corp., 121 F.3d 58, 71 (2d Cir. 1997). To establish good faith, the employer must show that it (1) took active steps to ascertain the dictates of the FLSA and then (2) acted to comply with them. See id.

    The NYLL also provides for liquidated damages in addition to actual damages under some circumstances. See N.Y. Lab. L. §§ 198(1-a), 663(1). While the statutory text of the federal and state liquidated damages provisions differ, compare N.Y. Lab. L. §§ 198(1-a), 663(1), with 29 U.S.C. § 260, courts have not "substantively distinguished the federal standard from the current state standard of good faith." Inclan, 95 F. Supp. 3d at 505; see also He v. Home on 8th Corp., No. 09-cv-5630 (GBD), 2014 WL 3974670, at *7 n.19 (S.D.N.Y. Aug. 13, 2014).

Courts have held that, at the summary judgment stage, an employer's hiring of an accountant is a sufficient step to create a genuine dispute of material fact as to an employer's good faith. See, e.g., Franco v. Jubilee First Ave. Corp., No. 14-cv-07729 (SN), 2016 WL 4487788, at *16 (S.D.N.Y. Aug. 25, 2016) (denying the plaintiff employees' summary judgment motion because the defendants "testified that at both . . . locations they relied on advice from payroll companies regarding compliance with federal and state wage-and-hour laws"); see also Genao v. Blessed Sacrament Schl., No. 07-cv-3979 (CLP), 2009 WL 3171951, at *11 (E.D.N.Y. Oct. 1, 2009) (declining to award liquidated damages in part because the defendant "was not aware of the intricacies of the FLSA" and "relied on the accountant to review the [employer's] records").

Here, the defendants point to evidence indicating that they hired an outside accountant and bookkeeper and would fax the hours and tip wages to the outside accountant on a weekly basis, indicating that the defendants were not attempting to conceal the way in which they were compensating employees. Moreover, the defendants point to testimony indicating that they read materials provided by the government regarding wage and hour laws, and posted this information in the restaurant. See Dertouzos Dep. 39:11-40:23. Accordingly, genuine disputes of material fact exist as to whether the defendants took sufficient

steps to comply with the dictates of the FLSA and NYLL to establish good faith. See Reich, 121 F.3d at 71. As such, the plaintiffs' motion for partial summary judgment on the issue of liquidated damages is denied.

E.

1.

Cucu argues that she is entitled to statutory damages because the defendants did not provide her with a wage notice containing certain required disclosures. Under the Wage Theft Prevention Act ("WTPA"), an employer must provide employees with a wage notice containing information such as rate of pay and tip allowances at the time of hiring and annually on or before the first of February thereafter. See N.Y. Lab. L. § 195(1)(a). If the employer fails to provide a proper wage notice, the employees are entitled to recover statutory damages. 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Lab. L. § 198(1-b). "Prior to February 27, 2015, the WTPA allowed employees to recover, as statutory damages for violations of this wage notice requirement, $50 per work week, not to exceed $2,500." Inclan, 95 F. Supp. 3d at 502. For plaintiffs hired before the WTPA took effect on April 9, 2011, the failure to provide a wage notice is insufficient to support a WTPA claim because the Second Circuit Court of Appeals has held that the WTPA does not apply retroactively. See Gold v. N.Y. Life Ins. Co., 730 F.3d 137,

16

143–44 (2d Cir. 2013); Inclan, F. Supp. 3d at 502. Statutory damages were increased after that date. Id. at n.6. Thus, the point in time at which the defendants were obligated to provide a proper wage notice was February 1, 2012, the first February after the WTPA was passed. See id. (determining that liability for statutory damages began on February 1, 2012 for employees hired before that date).

Here, it is undisputed that the defendants did not provide Cucu with a wage notice form when she was hired. The defendants produced a wage notice signed by Cucu dated February 7, 2013, and the defendants do not argue that Cucu was ever provided with a wage notice prior to that date. As a result, there is no genuine dispute of material fact that Cucu is entitled to statutory damages of $50 per week for each week between February 1, 2012 and February 7, 2013 based upon the defendants' failure to provide Cucu with a wage notice, not to exceed $2,500.

2.

The WTPA also requires employers to include in each employee's pay statement an accounting of "gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages," as well as "regular hourly rate or rates of pay." 2010 N.Y. Laws ch. 564, § 3, amending N.Y. Labor Law § 195(3). "Prior to February 27, 2015, the WTPA allowed employees to recover, as statutory damages for violations of this wage

statement requirement, $100 per work week, not to exceed $2,500." Inclan, 95 F. Supp. 3d at 503 (citing 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Labor Law § 198(1–d)).

The plaintiffs claim that both Cucu and Iniguez did not receive proper wage statements, because the statements they were given lacked an hourly wage rate. The defendants admit that both Cucu and Iniguez received wage statements that did not contain any hourly rates until January 2013. (56.1 Stmts ¶ 10, 26.) Moreover, the payroll journals provided by the defendants indicate that wage statements only began including hourly rates on January 1, 2013. (See Ex. 1 at 263-64.) Thus, both Cucu and Iniguez are entitled to statutory damages of $100 per week up until January 1, 2013, up to $2,500. For Cucu, this period begins on September 24, 2012. (See Ex. 1 at 250.) And for Iniguez, this period begins on April 9, 2011, the date on which the WTPA took effect. (See Ex. 1 at 365.) Thus, the plaintiffs' motion for partial summary judgment is granted with respect to their WTPA claims.

IV.

The damages calculations necessitated by this decision require multiple calculations, with respect to each plaintiff and cause of action. These calculations are best performed, in the first instance, by counsel. Accordingly, the Court hereby directs the parties to submit revised proposed damages

18

calculations consistent with this Opinion. The Court hereby sets the following schedule for such submissions:

By **June 16, 2017,** the plaintiffs shall provide a letter to the defendants (but not then filed on ECF) itemizing, by plaintiff and by claim, the plaintiffs' proposed damages calculation and explaining, clearly and with specificity, the basis for each calculation.

By **June 23, 2017,** the defendants shall provide a letter to the plaintiffs stating whether they have any objections to any of the plaintiffs' proposed damages calculations, and if so, explaining, clearly and with specificity, the basis for each point of disagreement, and stating (and explaining the basis for) the defendants' contrary calculation. In the event the defendants disagree as to any aspect of the plaintiffs' damages calculation, the parties are directed to meet and confer to attempt to resolve any discrepancies.

By **June 30, 2017,** either (1) the parties shall jointly submit a proposed damages calculation, or (2) the plaintiffs shall file its proposed damages calculation, in which case the defendants shall file any opposition by **July 7, 2017**, and the plaintiffs shall file a reply by **July 14, 2017**. See Hernandez, 2016 WL 3248493, at *36-37.

**CONCLUSION**

To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the foregoing reasons, the plaintiffs' motion for partial summary judgment is **granted in part and denied in part**.

**SO ORDERED.**

**Dated:** New York, New York
June 1, 2017

_____/s/_____
**John G. Koeltl**
**United States District Judge**